Walter E. MULLINS, Plaintiff and Respondent,

v.

Ralph M. EVANS and Royal Industries Corporation, Inc., a California Corporation, Defendants and Appellants.

No. 14407.

Supreme Court of Utah.

Feb. 15, 1977.

---

Roger F. Cutler and Lynn G. Foster, Foster, Cutler, Price & Goodwill, Salt Lake City, for defendants and appellants.

Wallace R. Lauchnor, Bayle & Lauchnor, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellants were defendants below and bring this appeal from judgment as follows: against Ralph M. Evans in the amount of $6,040; and against Royal Industries Corporation, Inc., in the amount of $47,160.

Mr. Evans and Mr. Mullins (the plaintiff below) were once neighbors and at times they performed labor for each other. At different times Mr. Evans was president of several corporations, but none was his alter ego.

At the request of Mr. Evans, Mr. Mullins made a machine for the Efco Corporation of which Evans was the president, and was paid for his services by an Efco check. Thereafter, he made some machines at the request of Mr. Evans for the R. M. Evans Company, a corporation. He was paid for his labor by checks from that corporation.

The dies and tools for the manufacture of those machines were taken to Arizona, and a dispute arose over money because Mr. Mullins had devised a safety feature to the plans and specifications furnished by Mr. Evans for the manufacture of the machines. Mr. Evans, as president of his company, wrote the following letter to Mr. Mullins:

Dear Walt:

In reference to our conversation of March 24, 1967 regarding your commissions on the EVANS EZY–BOND pinch roller sales.

As agreed, we will pay you a two-percent (2%) commission on all EVANS EZY–BOND pinch rollers manufactured in Glendale, Arizona. This commission to be based on the Mfg. Co. sale price of the pinch roller or $1,165.00 per machine. Said commissions to be paid to you each month beginning with pinch rollers manufactured after April 1, 1967.

In reference to the five-percent (5%) commission to be paid to you on the net profits of Ralph Evans Manufacturing Company, Inc. for the period ending March 31, 1967. The net profits will be computed and finalized sometime in the month of April 1967. You will be noti-

fied of this amount at the earliest possible date and the amount due will be paid to you during the first quarter of the calendar year 1968.

I trust that you will find the above in accordance with our verbal agreements on these items.

> Very truly yours,
> R. M. EVANS & CO., INC.
> Ralph M. Evans
> President

Mr. Mullins contends that his agreement was with Mr. Evans personally, since the corporation never approached him. This contention evinces a lack of knowledge of how a corporation operates, viz.: only through its agents.

A constant line of communication between Mr. Mullins and the corporation shows beyond any doubt that Mr. Mullins knew he was dealing with the R. M. Evans Company, a corporation, and not with Mr. Evans personally.[1]

When Mr. Evans and Mr. Mullins were discussing the proposed agreement, Mr. Mullins said, "Put it in writing and I will agree." It was put in writing as shown by the letter above set out which clearly indicates that the contract is with the R. M. Evans Company, Inc., and not with Mr. Evans.

In his original complaint Mr. Mullins sued Royal Industries Corporation, Inc. and Mr. Evans personally. After the trial court dismissed the complaint as to the defendants, Mr. Mullins then filed an amended complaint against them wherein he claimed an oral contract with Mr. Evans personally whereby Mr. Evans promised to pay commissions to Mullins on machines manufactured by the R. M. Evans Corporation.

Since the original complaint stated a "contract" between Mullins and Evans, either a written contract or an oral contract could have been made out; and when the trial court dismissed the complaint as to Evans, it was dismissed as to oral as well as written contracts.

It was claimed in the amended complaint that the R. M. Evans Company, a corporation, sold all its assets to the Royal Industries Corporation, Inc.; and, therefore, that entity would be liable for a commission to Mullins on all machines which it manufactured and sold.

A dispute arose between R. M. Evans Company, Inc., and Mr. Mullins over the amount of money due pursuant to the agreement made March 24, 1967, as evidenced by the letter above. On August 23, 1968, the R. M. Evans Company, Inc. sent to Mr. Mullins a letter as follows:

Dear Walt:

Enclosed you will find our check in the amount of $1182.78. This check represents the following: payment on EZY–BOND machines per your letter.

| | |
|---|---|
| 52 at $23.30 ea. (83 less 31 defective) | $1211.60 |
| 5% commission on net profits of RALPH EVANS MFG. CO., INC. to March 31, 1967 ($8504.57 net profit—payment for 11 months) | 389.80 |
| | $1601.40 |
| Less moving expenses for L. Mullins | 418.62 |
| Total due | $1182.78 |

The EZY–BOND pinch roller has undergone considerable changes. The square shaft proved most unsatisfactory and several other severe changes in the overall machine were necessary for dependable production.

Subcontract costs on this machine as well as the EZY–FORM have been and are presently about one half what they were before moving the factory to Glendale. I honestly feel, Walt, that you have been well paid for any design and development efforts that you put into the EZY–BOND and do not feel further payment to you on this machine is justified. Therefore, effective May 1, 1968 we will no longer

---

**1.** He testified in this case that he "commenced making some machines, known as post-forming machines for some companies run by Mr. Evans in Arizona."

pay you commission on each EZY–BOND manufactured.

Very truly yours,

R. M. EVANS & COMPANY, INC.

Ralph M. Evans

President

The defendants claim that this letter must be considered as a part of the check, and by cashing the check Mr. Mullins entered into an accord and satisfaction of all claims for future commissions.

Where a dispute exists as to an amount presently due, the cashing of a check under circumstances such as existed in this case would undoubtedly constitute an accord and satisfaction for the amount then due. Mr. Mullins does not claim to the contrary, but he does claim that the letter could not affect his contract to receive commissions on future sales of the machine; and since the check sent was for past due commissions, he, by cashing it, did not agree to any change in his contractual relations with the defendants.

■ In answer to an interrogatory in the special verdict, the jury found that Mr. Mullins in cashing the check did not understand that he was being paid for all sums allegedly due him under the letter regarding the 2% payment. We hold that by cashing that check, Mr. Mullins waived any claims for commissions on machines sold prior to August 23, 1968, but not for subsequent sales, if any there were.

■ R. M. Evans Co., Inc. has not manufactured any square shafted pinch rollers since the spring of 1967; however, it did manufacture since that date the same machine with a round shaft containing the safety feature design by Mr. Mullins. We do not think the substitution of the round shaft for a square shaft would defeat the claim of Mr. Mullins.

On December 31, 1968, the R. M. Evans Company, Inc. sold its business to the Royal Industries Corporation, which corporation has continued to manufacture the pinch roller machines. As a part of the sale the purchaser agreed to assume all debts and liabilities of the selling corporation. The liability for a commission on machines sold was not disclosed to the purchaser because Mr. Evans thought that the matter was closed by his letter of August 23, 1968, to Mr. Mullins and the subsequent cashing of the check enclosed therein.

■ The right of Mr. Mullins to a commission was limited to machines made by the R. M. Evans Company, Inc. If the company made and sold no machines, then no commissions would be due Mr. Mullins, and he would have no basis for an action on his contract against the R. M. Evans Company.

If the purchaser knew of the contingent obligation of the R. M. Evans Company, there might be a basis for the claim against it by Mr. Mullins on the theory of a third-party beneficiary contract. However, in this case there is no proof that Royal Industries knew or had any reason to know that Mr. Mullins would claim a commission on machines which it would manufacture and sell.

■ The Mullins claim against the purchaser of the R. M. Evans business could have no more efficacy than could an unrecorded mortgage upon a piece of machinery included in the sale; and a purchaser for full value without notice of contingent and unrecorded claims would have no duty to pay the owners of those claims.

If anybody owed any obligation to Mr. Mullins, it was the R. M. Evans Company, Inc., but that company was not made a party to this action.

The judgment rendered is reversed. Costs are awarded to the appellants.

HENRIOD, C. J., WILKINS, J., and VeNOY CHRISTOFFERSEN, District Judge, concur.

MAUGHAN, J., does not participate herein.

CROCKETT, Justice (concurring with special comment).

I agree with the decision because, as it clearly points out, under the facts shown,

any claim plaintiff Mullins has would be against the R. M. Evans Company, Inc. and not against the defendants in this action. But I add this comment: assuming that the quoted letter should be considered as part of the check and thus as containing a provision that it was payment in full for all past due indebtedness, I do not think we can say as a matter of law that the cashing of the check necessarily paid such indebtedness.

I agree that where there is dispute as to an amount due, and only when there is such dispute, the proffer of a check with such a condition may constitute an offer, which the payee may accept. If he does that would constitute an accord and satisfaction of the claim. But this is not accomplished by the debtor unilaterally imposing such a condition. In this instance, in regard to the dispute between the parties, the trial court submitted the question to the jury as to whether Mr. Mullins, in cashing the check, understood and agreed that he was being paid for all sums then due him. The jury found this issue of fact in his favor. Under such circumstances I do not think we should say that there was an accord and satisfaction as a matter of law.